Ryan G. Baker (Bar No. 214036)
  rbaker@bakermarquart.com
Jaime W. Marquart (Bar No. 200344)
  Jmarquart@bakermarquart.com
Christian A. Anstett (Bar No. 240179)
  canstett@bakermarquart.com.com
BAKER MARQUART LLP
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, California 90024
Telephone:  (424) 652-7800
Facsimile:   (424) 652-7850

Attorneys for defendants Alkiviades David, FilmOn.com, Inc. and
Aereokiller, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY DILLER, an individual<br><br>Plaintiff,<br><br>vs.<br><br>BARRY DRILLER, INC.; BARRY DRILLER CONTENT SYSTEMS PLC; AEREOKILLER, LLC; FILMON.COM, INC.; ALKIVIADES DAVID, A/K/A ALKI DAVID; and DOES 1-10<br><br>Defendants. | CASE NO. CV12-07200 MMM (Ex)<br><br>**DEFENDANT FILMON.COM AND AEREOKILLER LLC'S RESPONSE TO ORDER TO SHOW CAUSE AND OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: August 29, 2012<br>Time: 10:00 a.m.<br>Judge: Hon. Audrey B. Collins<br>Place: Courtroom 680 |

BAKER MARQUART LLP
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, California 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.................................................................1

INTRODUCTION ....................................................................................................................1

ARGUMENT   3

I.     BASED ON A BALANCING OF THE EQUITIES, A PRELIMINARY
INJUNCTION SHOULD NOT ISSUE AGAINST FILMON AND AEROKILLER,
WHICH ARE PREJUDICED BY PLAINTIFF'S LATE SERVICE......................................3

II.     PLAINTIFF FAILS TO MEET EACH ELEMENT REQUIRED FOR
ISSUANCE OF A PRELIMINARY INJUNCTION...............................................................4

III.     PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS .............................4

A.   PLAINTIFF IS UNLIKELY TO PREVAIL ON HIS COMMON LAW AND
STATUTORY PUBLICITY CLAIMS DUE TO THE "TRANSFORMATIVE USE"
DEFENSE…………..……………………………………………………………5

B.   PLAINTIFF'S CITED AUTHORITIES ON THE RIGHT OF PUBLICITY ARE
INAPPOSITE TO THE FACTS OF THIS CASE…………………………………..8

C.   PLAINTIFF IS UNLIKELY TO PREVAIL ON HIS FALSE DESIGNATION
LANHAM ACT CLAIM……………………………………………………………9

1.   DEFENDANTS' ALLEGED "USE" OF DILLER'S NAME DOES NOT
SUGGEST SPONSORSHIP OR APPROVAL AND IS PROTECTED
"NOMINATIVE USE" ……………………………………………………9

2.   PLAINTIFF'S FALSE DESIGNATION CLAIM IS NOT SUPPORTED BY
THE *SLEEKCRAFT* LIKLIHOOD OF CONFUSION FACTORS………………....10

a.  PLAINTIFF'S MARK IS WEAK, ESPECIALLY AS TO DEFENDANTS'
AUDIENCE……………………………………………………………10

b.  THERE IS NO PROXIMITY OR "CLOSE RELATIONSHIP" BETWEEN
PLAINTIFF'S REPUTATION AND DEFENDANTS' IMAGE AND
BUSINESS…………………………………………………………….11

c.   THERE IS LITTLE TO NO SIMILARITY OF MARKS…………………12

d.  PLAINTIFF CONCEDES THAT THERE IS NO ACTUAL
CONFUSION  ...………………………………………………………12

e.  PLAINTIFF HASN'T PROVIDED SUFFICIENT EVIDENCE OF
MARKETING CHANNELS………………………………………………..13

f.   THE DEGREE OF CONSUMER CARE IS NOT WELL ESTABLISHED.13

g.  DEFENDANTS' INTENT WAS BENIGN………………………………14

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

h. EXPANSION OF PRODUCT LINES IS UNCLEAR………………………..14

IV.   PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM IF THE INJUNCTION
        DOES NOT ISSUE.....................................................................................................15

    A.   IRREPARABLE HARM IS NOT PRESUMED………………………………..15

        1. ACTUAL HARM WILL NOT RESULT ABSENT AN INJUNCTION………15

V.   THE BALANCE OF HARDSHIPS FAVORS DEFENDANTS ..........................................16

VI.  PUBLIC INTEREST DOES NOT SUPPORT ISSUANCE OF INJUNCTIVE RELIEF..17

CONCLUSION...............................................................................................................................19

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Cases**

*AMF Inc. v. Sleekcraft Boats,*
 599 F. 2d 341, (9th Cir. 1979) ................................................................. 10

*Arenas v. Shed Media U.S. Inc.,*
 2011 WL 8427612 (C.D. Cal. 2011) ........................................................ 5

*Cairns v. Franklin Mint Co.,*
 107 F.Supp.2d 1212 (C.D. Cal. 2000) ..................................................... 9

*Chaplin v. Amador,*
 93 Cal.App. 358 (1928) ........................................................................... 8

*Fifty-Six Hope Road Music Ltd. V. A.V.E.L.A., Inc.,*
 688 F. Supp. 2d 1148 (D. Nev. 2010) ..................................................... 17

*Hilton v. Hallmark Cards,*
 599 F.3d 894 (2009) ............................................................................ 5,19

*Hoffman v. Capital Cities/ABC Inc.,*
 225 F.3d 1180 (9th Cir. 2001) ................................................................ 18

*Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.,*
 828 F.2d 1482 (10th Cir. 1987) .............................................................. 13

*Kournikova v. General Media Communications, Inc.,*
 278 F. Supp. 2d 1111 (C.D. Cal. 2003) .................................................. 11

*Leatherman Tool Group, Inc. v. Coast Cutlery Co.,*
 823 F. Supp. 2d 11500 (D. Or. 2011) ..................................................... 15

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,*
 507 F.3d 252 (4th Cir. 2007) .............................................................. 13,18

*Mattel, Inc. v. MCA Records, Inc.,*
 28 F.Supp.2d 1120 (1998) ...................................................................... 18

*Mattel, Inc. v. Walking Mountain Prods.,*
 353 F. 3d 792, 806 n. 12 (9th Cir. 2003) ................................................ 17

*Mazurek v. Armstrong,*
 520 U.S. 968 (1997) ................................................................................. 4

*Mut. Pharm. Co. v. Ivax Pharms., Inc.,*
 459 F.Supp.2d 925 (C.D. Cal. 2006) ...................................................... 15

*New Kids on the Block v. News America Publishing, Inc.,*
 971 F. 2d 302 (9th Cir. 1992) ........................................................ 10,12,13

*Robert Trent Jones II, Inc. v. GFSI, Inc.,*
 537 F.Supp.2d 1061 (N.D. Cal. 2008). .................................................. 15

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 ● Fax: (424) 652-7850

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

*Seed Services, Inc. v. Winsor Grain, Inc.*
  2012 WL 1232320 (E.D. Cal. April 12, 2012) ............................................... 9,15

*Smith v. Chanel, Inc.*,
  402 F. 2d 562 (9th Cir. 1968) ................................................................. 9

*Universal City Studios, Inc. v. Ideal Publishing Corp.*,
  195 U.S.P.Q. 761 (S.D.N.Y. 1977)............................................................13

*Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council*,
  425 U.S. 748 (1976)............................................................................. 18

*Weingard v. Lorre*,
  231 Cal.App.2d 289 (1964) ...................................................................... 8

*Winter v. D.C. Comics*,
  30 Cal. 4th 881 (2003) ....................................................................... 6,7

*Winter v. NRDC*,
  555 U.S. 7 (2008).............................................................................. 4

*White v. Samsung Electronics, Inc.*,
  971 F. 2d 1395 (9th Cir. 1992) ...................................................... 11,14,18

*YKK Corp. v. Jungwoo Zipper Co.*,
  213 F. Supp. 2d 1195 (C.D. Cal. 2002). ..................................................... 11

**Statutes**

15 U.S.C. § 1125(a) ............................................................................ 5,9

15 U.S.C. § 1125(e) .............................................................................. 5

**Other Authorities**

J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,
  § 28:14 (4th ed. 1996)) ......................................................................... 9

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

Defendants FilmOn.com, Inc. ("FilmOn") and Aereokiller, LLC ("Aereokiller") were served late, on August 30, 2012, a week *after* this court's issuance of a temporary restraining order on August 24, 2012. These newly added defendants are clearly prejudiced by the late service of the complaint, the Court's August 24, 2012 Order and the papers related to plaintiff's request for injunctive relief. Both FilmOn and Aerokiller have registered agents, and neither is difficult to locate for service. Plaintiff must not be allowed to ambush these defendants by presenting them with a host of complicated arguments only days before the hearing.

The factual arguments in Plaintiff's reply brief and supporting papers concerning the supposed misconduct of FilmOn and Aereokiller prior to service of the Complaint and prior to their appearance in this action merely distract from the true issue before the court, *i.e.* whether Plaintiff has met his burden for the extraordinary relief of preliminary injunction. He has not.

Plaintiff requests injunctive relief based on the similar sounding names of "Barry Diller" and "Barry D**r**iller." Plaintiff's argument purposefully overlooks the full impact of the name *and image* of Barry D**r**iller. Plaintiff's request should be denied for lack of the necessary supporting evidence. To support his request for such extraordinary relief, plaintiff must provide evidence of: 1) a likelihood of success on the merits; 2) irreparable injury; 3) a balance of hardships favoring plaintiff; and 4) some public interest in the injunction. Plaintiff bears burden to satisfy each of those factors. Plaintiff fails. His application for injunctive relief should be denied, as to all defendants, for the following reasons:

1. There is no likelihood of success on the merits under the Lanham Act false designation claim or the right of publicity doctrines. As admitted by plaintiff in his *ex parte* application "there is no actual confusion."

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

Application for TRO (TRO App. at 11: 7-16.) There also is **no possibility of confusion or even similarity** between on one hand, an established business person and entertainment mogul with 40+ years of experience (Plaintiff Diller) and an irreverent, edgy cartoon-like image of a 20-something man with a six pack (Defendants' new media image Barry Driller). Ninth Circuit law recognizes this difference under the "transformative use" defense to right of publicity claims, as well as the related "nominative use" defense under trademark law;

2. There is no irreparable injury from a website that was created in July 2012, which no longer contains references to Barry Driller (and never referred to Barry Diller). Plaintiff's eleventh hour declarations in reply briefing regarding supposed continuing use by FilmOn and Aereokiller cannot satisfy this element because of the late service, and late notice, to those parties of the action;

3. Balancing of hardships favors defendants, particularly as to their first amendment speech rights and rights of expression in the image of BarryDriller. That image does not depend on the identity of Diller other than a clear play on words, or parody. It does not imply endorsement by Plaintiff and there is no credible argument that the public would see or construe such an endorsement. Further, the speculative nature of plaintiff's alleged basis for key Lanham Act elements such as injury, confusion and similarity tips the balance of hardships towards defendants; and

4. Public interest does not favor injunctive relief here. In fact, the public benefits from having access to defendants' internet streaming services as a form of consumer access to information and media. Given its inherent

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1   consumer protection goals, the Lanham Act does not support the

2   issuance of injunctive relief on these facts.

3       Plaintiff's Complaint, *Ex Parte* Application and other court papers demonstrate

4   the prematurity of issuing a preliminary injunction at this stage of litigation.  No

5   discovery has been taken, and FilmOn and Aereokiller were only just served with the

6   Complaint and provided notice of plaintiff's claims.  Despite the last ditch effort to

7   make a factual showing in declarations submitted with plaintiff's reply brief this

8   week, plaintiff simply does not present enough for this Court to issue the requested

9   relief.  Instead, the parties should be permitted to engage in discovery and develop the

10  facts and law as the case progresses.  The Court should deny plaintiff's application

11  for a preliminary injunction, as to all defendants.

12  <u>**ARGUMENT**</u>

13  **I.**    <u>**BASED ON A BALANCING OF THE EQUITIES, A PRELIMINARY**</u>

14  <u>**INJUNCTION SHOULD NOT ISSUE AGAINST FILMON AND**</u>

15  <u>**AEREOKILLER, WHICH ARE PREJUDICED BY PLAINTIFF'S**</u>

16  <u>**PURPOSEFUL LATE SERVICE**</u>

17      On August 24, 2012, upon plaintiff's *ex parte* application, this court issued a

18  temporary restraining order restraining Defendants from "using 'Barry Diller,' 'Barry

19  Driller,' 'Barrydriller.com,' 'Barry Driller, Inc.,' 'BarryDriller Content Systems

20  PLC,' any confusingly similar variant of the foregoing, or any other aspect of the

21  name, voice, likeness, or other indicia of identity to plaintiff Barry Diller to operate

22  Defendants' commercial websites, promote Defendants' business, or in any other

23  manner infringe plaintiff's trademarks, rights of publicity and other rights."

24      It was not until August 30, 2012, however, that plaintiff served two of the

25  defendants (FilmOn and Aereokiller), with a copy of the Complaint and all other

26  papers, including the Court's order and all papers related to plaintiff's request for a

27  preliminary injunction.  This late notice impairs these defendants' ability to properly

28

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1  and timely respond to the application for injunctive relief.  Further, it appears that

2  plaintiff *purposefully withheld* factual arguments and purported evidence of supposed

3  continuing use until *after* late service of the complaint on FilmOn and Aereokiller

4  and before these parties made any appearance in this action.  There is no reason that

5  these arguments could not have been presented in the *ex parte* application or earlier

6  briefing.  The combination of late service <u>and</u> filing of papers just this week

7  containing brand new factual allegations as to FilmOn and Aereokiler underscores

8  plaintiff's attempt to blindside these parties and to prevent them from presenting their

9  arguments to the court.  This court should consider the prejudice to FilmOn and

10  Aereokiller in balancing equities under the four factor test for issuing injunctive

11  relief.  Due process and fairness concerns strongly urge that that the application be

12  denied on grounds of late service and late notice.[1]

## II.   PLAINTIFF FAILS TO MEET EACH ELEMENT REQUIRED FOR ISSUANCE OF A PRELIMINARY INJUNCTION

15          The Supreme Court has recognized that "a preliminary injunction is an

16  extraordinary and drastic remedy, one that should not be granted unless the movant,

17  by a *clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520

18  U.S. 968, 972 (1997) (emphasis in original).  In order to receive a preliminary

19  injunction, plaintiff bears the burden of showing "that he is likely to succeed on the

20  merits, that he is likely to suffer irreparable harm, that the balance of equities tips in

21  his favor, and that an injunction is in the public interest."  *Winter v. NRDC*, 555 U.S.

---

[1] Local Rule 7-19.1 requires an attorney applying for an *ex parte* order to make reasonable, good faith efforts to orally advise counsel for all other parties, if known, of the date and substance of the proposed *ex parte* application.  Here, as previously briefed, plaintiff's efforts to notify opposing counsel of the date and substance of the application were not reasonable.  Plaintiff's counsel has stated that he emailed, and left a voicemail message for, Mr. Jaime Marquart, who is identified as counsel for Mr. David in another matter.  But at the time of counsel's August 22, 2012 voicemail and email correspondence, Mr. Marquart was in Arizona for a family emergency, and he did not receive the voicemail or the email.  (*See* Baker Declaration, dated and filed 8/23/12, ¶ 6.)  As of August 22, 2012, neither Mr. Marquart nor his law firm had been retained by any of the defendants to defend them in this action.  (*Id.* at ¶ 3.)

7, 20 (2008).  If plaintiff fails to meet his burden as to any of these factors, the request for injunctive relief should be denied. *See, e.g., Id.* Here, plaintiff cannot establish any one of the four necessary elements.  His request for injunctive relief should therefore be denied.

## III.   PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff asserts four causes of action in the complaint yet effectively abandons the fourth cause of action (for cybersquatting under the Lanham Act) by ignoring it in the application for injunctive relief as well as in reply briefing.[2]  None of the other three claims support injunctive relief, as they are unlikely to succeed for several reasons.

### A.   Plaintiff Is Unlikely To Prevail on His Common Law and Statutory Publicity Claims Due to the "Transformative Use" Defense

Under California law, the First Amendment provides the affirmative defense of transformative use to claims of right of publicity and misappropriation.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 908-909 (holding defendant entitled to raise transformative use defense against claim by Paris Hilton that it used her image and catch-phrase in a birthday card).  The defense is based "loosely" on the intersection of the First Amendment and copyright law, and depends on "whether … a product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness." *Id.* at 909.  The "potential reach" of the defense is expansive:

> The form of expression to which it applies is not confined to parody
> and can take many forms, including fictionalized portrayal … heavy
> handed lampooning … and subtle social criticism.  Nor should courts

---

[2] Plaintiff asserts two claims under the Lanham Act, for false designation, 15 U.S.C. § 1125(a), and cybersquatting, 15 U.S.C. § 1125(e). Notably, Plaintiff does not even attempt to demonstrate a likelihood of success on the cybersquatting claim.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1    be concerned with the quality of the artistic contribution-vulgar forms

2    of expression fully qualify for First Amendment protection.  It is thus

3    irrelevant whether Hallmark's card qualifies as parody or high-brow

4    art.  Nor does it matter whether Hallmark sought to profit from the

5    card; the only question is whether the card is transformative.

6    *Id.* at 909-910 (internal quotation and citation omitted).  A plaintiff seeking to enjoin

7    the alleged use of a likeness cannot show a likelihood of success on the merits where

8    the transformative use defense applies.  *Arenas v. Shed Media U.S. Inc.*, 2011 WL

9    8427612 (C.D. Cal. 2011) at *5-6 (preliminary injunction sought by NBA star Gilbert

10   Arenas to prevent ex-lover from appropriating his image for commercial gain on

11   reality television show denied because transformative use defense applied).

12          In order to determine whether the defense applies, the court conducts an

13   inquiry into whether the use of the celebrity's likeness has been sufficiently

14   "transformed" by the defendant's contribution.  Contrary to plaintiff's argument in

15   reply briefing, there is no limitation in the law that the court examine only the

16   similarity of name when there is a clear visual component presented on the facts.

17   Further, the First Amendment's limits on the celebrity's ability to control of his

18   public depiction are critical to this analysis: "the right of publicity cannot, consistent

19   with the First Amendment, be a right to control the celebrity's image by censoring

20   disagreeable portrayals.  Once the celebrity thrusts himself forward into the limelight,

21   the First Amendment dictates the right to comment on, parody, and lampoon, and

22   make other expressive uses of the celebrity be given broad scope."  *Winter v. D.C.*

23   *Comics*, 30 Cal. 4th 881, 888 (2003).  California courts have held that comic or

24   cartoon images of celebrities that are intentionally distorted to create a caricature of a

25   celebrity are transformative:

26          Application of the test to this case is not difficult.  We have reviewed

27          the comic books and attach a copy of a representative phrase.  We can

28

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

readily ascertain that they are not just conventional depictions of plaintiffs but contain significant expressive content other than plaintiffs' mere likenesses.  Although the fictional characters Johnny and Edgar Autumn are less-than-subtle evocations of Johnny and Edgar Winter, *the books do not depict plaintiffs' literally*.  Instead, plaintiffs are merely part of the raw materials from which the comic books were synthesized.  ***To the extent the drawings of the Autumn brothers resemble plaintiffs at all, they are distorted for purposes of lampoon, parody or caricature.***  And the Autumn brothers are but cartoon characters –half human and half worm … The characters and their portrayal do not greatly threaten plaintiffs' right of publicity. . . The comic books are similar to the trading cards caricaturing and parodying prominent baseball players that have received First Amendment protection … Like the trading cards, the comic books are no less protected because they provide humorous rather than serious commentary.

*Id.* at 479 (emphasis added).

Here, the depiction of "Barry Driller" created by defendants transforms the likeness of Barry Diller to effectively lampoon, caricature and parody in precisely the same way as the depictions of the Winters in the *D.C. Comics* decision.  The depiction of Barry Driller looks nothing like Barry Diller (or a younger version of Mr. Diller); instead, it is a cartoonish depiction of a shirtless, good-looking, muscular, young, blue-collar worker holding a drill with a lascivious look on his face and cartoon tool-belt with an over-sized FilmOn logo near the midsection.  No one would confuse the cartoon with Mr. Diller, and fans of Mr. Diller who wanted to purchase a picture of him would not accept the cartoon as a satisfactory substitute.  The cartoon lampoons and achieves a humorous effect precisely by emphasizing and exaggerating

noted contrasts with the real-life Barry Diller.  This is parody, and a study in dual

contrasts.  Whereas Mr. Diller is widely known for his white-collar business

experience, not as a laborer or youthful sex-symbol, defendants wholly transformed

the likeness of Mr. Diller by re-imagining him as a young, cartoon, fictional blue-

collar archetype committed to "drilling" (*i.e.* beating) his competitors.  The public

can perceive the transformation in both the pun and play on words in the surname <u>and</u>

the stark visual contrast of Mr. Diller and defendants' image.

Because plaintiff cannot establish that defendants are using Barry Driller to

evoke plaintiff's unique and distinguishable business and film industry identity for

reasons other than permissible commentary or expression protected under the

transformative use defense or doctrine, plaintiff has not established any likelihood of

success on his publicity claims.

**B.**      **Plaintiff's Cited Authorities on the Right of Publicity are Inapposite to the Facts of this Case**

Plaintiff attempts to cite a purported rule of law that "minor changes to a

celebrity's name … does not avoid liability for unauthorized commercial use of it,"

none of Plaintiff's cases stand for that proposition.  Indeed, *Weingard v. Lorre*, 231

Cal.App.2d 289 (1964), concerns the right of an actor to legally change his name

from Peter Lorie and does not involve the statutory right of publicity. The decision in

that case was motivated by a concern for something very like identity-theft:

"[P]etitioner bears a physical resemblance of sorts to, an affects the manner of speech

similar to that for which Peter Lorre is known; that for more than one year petitioner,

in the course of his business transactions, has held himself out to be Peter Lorre …

and also as the son of Peter Lorre, the well-known actor." *Id*. At 293. This case is

wholly distinguishable as there is no likeness between Diller (the mogul) and Driller

(the edgy young media figure). Further, there is no allegation that defendants have

tried to steal Mr. Diller's identity or pass themselves off as Mr. Diller.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

1   The *Chaplin v. Amador* decision also does not announce a rule that *any*
2   misspelling of a celebrity's name violates a celebrity's rights.  93 Cal.App. 358 1928.
3   Rather, the *Chaplin* court found that defendant intentionally imitated plaintiff in order
4   to deceive the public in a number of ways including by copying the style,
5   mannerisms, make-up and costume of Charlie Chaplin movies.  There, the
6   misspelling of Chaplin's name was just part of the defendant's larger scheme to trick
7   the public into thinking Chaplin was in a movie he was not actually involved with.
8   Here, in sharp contrast, defendants have publicly announced that Mr. Diller and his
9   service Aero are competitors.  There is no plausible basis that the public would view
10  Driller and automatically think of the mogul Diller.[3]

11      **C.    Plaintiff is Unlikely to Prevail on His False Designation Lanham Act**
12          **Claim**

13          **1.   Defendants' Alleged "Use" of Diller's Name Does Not Suggest**
14              **Sponsorship or Approval and is Protected "Nominative Use"**

15  Under 9th Circuit law, it "is clear that not all uses of a celebrity's image are
16  actionable under §1125(a)." *Cairns v. Franklin Mint Co.*, 107 F.Supp.2d 1212, 1214
17  (C.D. Cal. 2000).  Rather, "[o]nly uses which suggest sponsorship or approval are
18  prohibited." *Id.*  §1125(a) prohibits only "false endorsement," not "mere use of an
19  image or name." *Id.* (citing 5 J. THOMAS MCCARTHY, MCCARTHY ON
20  TRADEMARKS AND UNFAIR COMPETITION, § 28:14 (4th ed. 1996)).  It is well
21  established that "competitors may use a rival's trademark in advertising and other
22  channels of communication if the use is not false or misleading." *Id.* (citing *Smith v.*
23  *Chanel, Inc.*, 402 F. 2d 562, 563 (9th Cir. 1968) (use of a trademark to describe one's
24  own product as a replica of a trademarked product does not constitute trademark
25  infringement).  The *Cairns* court observed that in the reported false endorsement

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

---

[3] The *Seed Services* decision turns on an analysis of product sales, and is inapplicable
here. *See Seed Services, Inc. v. Winsor Grain, Inc.* 2012 WL 1232320 (E.D. Cal.
April 12, 2012) (marketing and sale of infringing alfalfa seeds).

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

1  cases, "the celebrities' images were used in commercial advertising to promote a
2  product and clearly communicated an endorsement." *Id.* at 1215. Where the image is
3  not used to identify the source of a product, a plaintiff cannot maintain a claim for
4  trademark infringement.  *Id.* Note that this "use" analysis is prior to and independent
5  of the "likelihood of confusion" analysis below.

6       Here, any alleged "use" of plaintiff's name or likeness does not communicate
7  an endorsement or identify plaintiff as the source of defendants' product; in fact, it is
8  the opposite.  Any such use is thus protected as "nominative use," as set forth by the
9  Ninth Circuit in the decision of *New Kids on the Block v. News America Publishing,*
10 *Inc.*, 971 F. 2d 302 (9th Cir. 1992).  The defense recognizes that trademarks that relate
11 to the personal identity of celebrities may affect speech or expression as to those
12 celebrities.  In evaluating the musical group's claim of trademark infringement based
13 on a newspaper poll that supposedly took unfair advantage of the group's popularity,
14 the court expressed concern that "[i]f the trademark holder were allowed exclusive
15 rights of use, the language would be depleted in much the same way as if generic
16 words were protectable," *Id* at 306.  The court observed that "we may generalize a
17 class of cases where the use of the trademark does not attempt to capitalize on
18 consumer confusion or to appropriate the cachet of one product for another one. Such
19 *nominative use* of a mark – where the only word reasonably available to describe a
20 particular thing is pressed into service-lies outside the strictures of trademark law." *Id*
21 at 307-08. Defendants have not violated the Lanham Act.

22       **2.  Plaintiff's False Designation Claim is Not Supported by the**
23           ***Sleekcraft* Likelihood of Confusion Factors**
24       The Ninth Circuit analyzes false designation claims under the *Sleekcraft*
25 "likelihood of confusion" test which is based on eight factors: "(1) the strength of the
26 mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual
27 confusion; (5) marketing channels used; (6) type of goods and the degree of care
28

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

1 likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark;

2 (8) likelihood of expansion of product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F. 2d

3 341, 348-49 (9th Cir. 1979).  Plaintiff cannot prevail on his false designation claim

4 unless he satisfies most of these factors.  As set forth below, Plaintiff has not, and

5 cannot, make the necessary showing.

6 **a.  Plaintiff's mark is weak, especially as to Defendants' audience**

7 "A mark with extensive public recognition and renown deserves and receives

8 more legal protection than an obscure or weak mark." *Kournikova v. General Media*

9 *Communications, Inc.*, 278 F. Supp. 2d 1111, 1121 (C.D. Cal. 2003) (citing *YKK*

10 *Corp. v. Jungwoo Zipper Co.*, 213 F. Supp. 2d 1195, 1200 (C.D. Cal. 2002).

11 Plaintiff is a well known figure in certain circles, notably the business and

12 entertainment fields.  Yet, his name likely does not have recognition or renown

13 among consumers of Defendants' internet streaming services.  Plaintiff's admitted

14 stature as a business person and entertainment mogul with a 40-year career simply

15 does not intersect or touch: 1) the playful edgy image of Driller; or 2) the audience

16 targeted for Defendants' services.  Strength of a mark relative to the target audience

17 is relevant for Lanham Act analysis.  *See, e.g., White v. Samsung Electronics, Inc.*,

18 971 F. 2d 1395, 1400 (9th Cir. 1992) ("If Vanna White is unknown to the segment of

19 the public at whom Samsung's robot ad was directed, then that segment could not be

20 confused as to whether she was endorsing Samsung VCR's") .  Similarly, here, there

21 can be no dispute as to whether plaintiff was endorsing defendants' services. The

22 Barry Driller name and character demonstrates plaintiff is not.  Rather than address

23 head on the issue of whether the relevant audience would recognize the strength of

24 his mark, plaintiff shifts the burden to defendants in reply briefing.  This is improper,

25 as plaintiff bears the burden of convincing the court of a likelihood of confusion

26 under the weight of the applicable factors.

27

28

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

**b. There is no proximity or "close relationship" between Plaintiff's reputation and Defendants' image and business**

The proximity factor is based on an analysis of whether Defendants' alleged misconduct (*i.e.*, use of the Barry Driller name and image) is "closely related" to the source of the public's awareness of Plaintiff and his alleged celebrity. There is no such close relationship between Plaintiff's decades of established film and business contributions and corporate activities and a two-month old cartoonlike depiction of a young shirtless man holding a power drill in his right hand that advertises an internet streaming service. The mere fact that the parties do business on the internet does not automatically equate to a close relationship. That would be akin to equating all retail stores in a mall with one another, regardless of product, design and services. But the public is not likely to confuse a retail store of young edgy fashion, such as H&M, with a more staid and established store like Bloomingdales.

**c. There is little to no similarity of marks**

Plaintiff's heavy reliance on the similar sounding name of Barry Diller and Barry Driller overlooks the real impact of Defendants' new media image, *i.e.* his highly stylized and modern physique, posture and attire. Plaintiff cannot establish any similarity between his well photographed appearance, which yields 629,000 hits in google images, and the drawing of the Barry Driller figure. (See Declaration of Christian A. Anstett ("Anstett Decl.") dated and filed 8/29/12 ¶¶ 2-3; Exs. A and B.)

**d. Plaintiff concedes that there is no actual confusion**

Plaintiff has admitted that he cannot show actual confusion. (TRO App at 11: 7-16.) This belies the weakness of his false designation claim. As explained above there also is no possible confusion of consumers viewing Plaintiff's image on the internet as compared with the cartoon-like Barry Driller image.

Trademark law is replete with examples of celebrities like Plaintiff who overreach to protect their name or likeness. Thus, in the *New Kids on the Block*

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1  decision, the Ninth Circuit affirmed summary judgment for defendant newspaper

2  publishers against the musical group New Kids on the Block.  The New Kids brought

3  a trademark infringement action against defendant newspapers that ran a poll that

4  supposedly took advantage of their popularity in order to get callers to use a 900

5  number with proceeds going to charity.  The newspapers were engaged in

6  commercial speech.  In affirming the lower court's finding of no trademark

7  infringement, the court observed that:

8       While the New Kids have a limited property right in their name, that

9       right does not entitle them to control their fans' use of their own

10       money. Where, as here, the use does not imply sponsorship or

11       endorsement, the fact that it is carried on for profit and in competition

12       with the trademark holder's business is beside the point.

13  *New Kids on the Block v. News America Publishing, Inc*., 971 F. 2d 302, 309 (1992)

14  (citing *Universal City Studios, Inc. v. Ideal Publishing Corp*. 195 U.S.P.Q. 761

15  (S.D.N.Y. 1977)).  That same court also recognized that cartoon-like parodies of the

16  New Kids were not subject to trademark protection. *Id*, fn. 9; s*ee also Louis Vuitton*

17  *Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 260 (4th Cir. 2007) (defining

18  parody); *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd*., 828 F.2d 1482, 1486 (10th

19  Cir. 1987) (finding the use of "Lardashe" jeans for larger women to be a successful

20  and permissible parody of "Jordache" jeans).

21       Any reasonable viewing of the Driller image would not cause public or

22  consumer confusion which is the key rationale to be weighed by courts in evaluating

23  Lanham Act claims.  At most, Barry D**r**iller would be seen as a comic reference to

24  the name or a play on words, contrasting establishment with upstart or old school

25  with new school.

26       **e.  Plaintiff has not provided sufficient evidence of marketing**

27       **channels**

28

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

Plaintiff asserts that he and defendants operate in the same marketing channels, *i.e.*, through the internet.  But plaintiff also concedes that defendants operate in a broader geographic scope of four cities compared to plaintiff's one, only overlapping in one city (New York). (TRO App at 11-13.)  There is insufficient evidence of the scope of marketing channels used by the parties.  It cannot weigh in favor of plaintiff.

### f.  The degree of consumer care is not well established

Likewise, Plaintiff asserts that there is a low degree of consumer care without offering further explanation.  With numerous internet media options available, consumers have grown more sophisticated and, therefore, more selective as to which internet forums they use or visit.  Plaintiff has not shown, and cannot show, that consumers of Diller's services are likely to end up mistakenly looking at Barry Driller.  The name alone is distinct, and the visual image even moreso.

### g.  Defendants' intent was benign

There is no indication that "Defendants' obvious intent was to free-ride off the goodwill associated with Plaintiff and the recent judicial success of Aereo to divert consumers to a business that seeks to compete against Aeroeo."  (TRO App at 11: 20-21.)  In fact, defendants' efforts were to distance their product from Barry Diller.  Any goodwill established by Plaintiff over his 40-year business and entertainment career would relate mostly to those industries and not the general public.  Plaintiff does not have the same public name recognition of other notable businessmen such as Donald Trump or Steve Jobs.  Even staying within the entertainment industry, Plaintiff is not as well recognized as Steven Spielberg.  And it should be clear that Defendants' Barry Driller image is not targeting the same mainstream industry figures that would understand or have any appreciation for plaintiff's goodwill.

Further, plaintiff concedes that 1) there is a copyright notice at the bottom of the BarryDriller.com website home page that states ownership by "Barry Driller Content Systems, Inc.," *id* at 3:22-23, and 2) defendant David was quoted in the

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

1  media as saying that he selected the name as an "homage to a great guy," *id* at 3:16-

2  17.  These facts strongly suggest a benign intent.

### h.  Expansion of product lines is unclear

4         As plaintiff notes, the Ninth Circuit held that this factor was not apposite in

5  celebrity endorsement cases such as the one brought by Vanna White against

6  Samsung. *See White v. Samsung Electronics America, Inc.*, 971 F. 2d 1395 (9th Cir.

7  1992).  The expansion factor is similarly not applicable here.  In any event, there is

8  no demonstration of expansion of product lines beyond speculation that there could

9  be possible overlap in the future.  Plaintiff bears the burden here and has not satisfied

10  this element or factor.

11  **IV.   PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM IF THE**

12  **INJUNCTION DOES NOT ISSUE**

13  **A. Irreparable Harm is Not Presumed**

14         While there is some uncertainty as to the status of the presumption of

15  irreparable harm with respect to trademark, as a case cited by plaintiff makes clear,

16  the "overall trend of case law" is not in doubt – courts will not "assume the existence

17  of irreparable injury." *Seed Services, Inc. v. Winsor Grain, Inc.*, 2012 WL 1232320

18  (E.D. Cal. 2012); *see also Leatherman Tool Group, Inc. v. Coast Cutlery Co.*, 823 F.

19  Supp. 2d 11500, 1157 (D. Or. 2011) ("It is now clear *eBay* signifies a return to

20  traditional equitable principles, under which presumptions of harm are not allowed").

21  Even if plaintiff were correct that irreparable harm is presumed on a showing of

22  likelihood of success on the merits of Lanham Act claim, no presumption applies here

23  because, as discussed above, plaintiff is unlikely to prevail on his Lanham Act claim.

24  *Robert Trent Jones II, Inc. v. GFSI, Inc.*, 537 F.Supp.2d 1061, 1068 (N.D. Cal. 2008).

25  **1.     Actual Harm Will Not Result Absent An Injunction**

26         In order to establish actual harm for purposes of irreparable injury analysis,

27  "speculative beliefs are insufficient to establish actual harm." *Leatherman*, 823 F.

28

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

Supp. 1158 (finding declarations from plaintiff's senior executives as to future diversion of customers insufficient to support finding that plaintiff had "indeed lost customers or market share" in false advertising case under Lanham Act); *Mut. Pharm. Co. v. Ivax Pharms., Inc.*, 459 F.Supp.2d 925, 945 (C.D. Cal. 2006). Here, plaintiff has simply asserted without any evidence that defendants' actions "have caused Plaintiff to lose the ability to control his name by associating it with a company and services with which he does not want to be associated, and over which he has no control."  (TRO App. at 13: 5-7.)  Further, plaintiff actually uses the conditional tense to describe his potential (not actual) injuries: "The public's opinion and impression of Plaintiff could be irreparably harmed by Defendants' … and the goodwill associated with Plaintiff's name could be permanently damaged through such efforts." *Id.*

The public has never been misled or confused with respect to plaintiff's involvement with defendants' businesses. At all times, defendants made abundantly clear in their statements and through their parodies of plaintiff that they were competitors with Mr. Diller and Aero. Even if the public had somehow still been initially misled as to Mr. Diller's involvement with defendants' companies, the recent media coverage of Mr. Diller's lawsuit against Defendants emphasizes Mr. Diller's lack of association with defendants. For example, the  August 22, 2012 Los Angeles Times article "Barry Diller is no fan of BarryDriller" holds true to the promise of its title by explaining Mr. Diller's claims concerning alleged consumer confusion. (Anstett Decl. filed and served 8/29/12, Ex. C.)  Plaintiff has not made any non-speculative, objective showing of actual harm or provided any other reason to believe in ongoing harm, therefore a preliminary injunction is improper.[4]

## V.    THE BALANCE OF HARDSHIPS FAVORS DEFENDANTS

[4] Nor *could* Plaintiff have made a showing of actual harm, since Defendants ceased operating the BarryDriller.com website, rebranded their business and ceased using the BarryDriller name and cartoon mascot. Defendants await this Court's ruling on these issues prior to making decisions related to the use of Barry Driller going forward.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1    Plaintiff has not established any injury at all, let alone irreparable or imminent

2  injury.  Defendants have taken down the image and name reference to Driller so any

3  imagined injury is now moot.[5]  Plaintiff's legal theories do not suggest that he will

4  prevail on the merits, and he either has abandoned his fourth cause of action or deems

5  it irrelevant for purposes of the Court's review of this application.  Further,

6  defendants FilmOn and Aereokiller were denied proper, timely service of the

7  Complaint.  These defendants were only served *after* issuance of the temporary

8  restraining order, and are subject of brand new factual allegations made just this week

9  in reply briefing.  This creates clear prejudice as to these defendants, and should be

10 considered by the court in balancing hardships to the parties as a whole.  Taken

11 together, the balance of hardships does not weigh in favor of plaintiff.  Plaintiff's

12 broadly worded injunction would impose hardship on defendants, and is not

13 sufficiently tailored to any specific, concrete harm.

14 **VI.    PUBLIC INTEREST DOES NOT SUPPORT ISSUANCE OF**

15 **INJUNCTIVE RELIEF**

16    The Lanham Act is primarily a consumer protection statute.  "The limited

17 purpose of the Lanham Act's trademark protection is 'avoid confusion in the

18 marketplace by allowing a trademark owner to prevent others from duping consumers

19 into buying a product they mistakenly believe to be sponsored by the trademark

20 owner.'" *Fifty-Six Hope Road Music Ltd. V. A.V.E.L.A., Inc.* 688 F. Supp. 2d 1148,

21 1158 (D. Nev. 2010) (citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F. 3d 792,

22 806 n. 12 (9th Cir. 2003).

23    Without a strong showing of consumer confusion, there is no basis for

24 injunctive relief. Defendants are engaged in expressive commercial speech that

25 provides an information-based service to the public via the internet. The public

26 inherently benefits from greater access to information and services. As set forth

27 _____

28

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
                                            PRELIMINARY INJUNCTION

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1  above, plaintiff concedes no actual confusion and also cannot demonstrate any

2  likelihood of confusion between his well established business presence and

3  defendants' edgy cartoonish new media figure. This aspect of the preliminary

4  injunctive analysis strongly weighs in favor of defendants.

5       In addition, First Amendment analysis also weighs in favor of denying

6  injunctive relief.  Defendants' verbal and visual parody of Mr. Diller is expression

7  protected by the First Amendment and implicates fundamental speech rights

8  necessary for democratic governance.  *See*, *e.g.*, *Louis Vuitton Malletier v. S.A.*

9  *Hauste Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007).  In his reply in support of his

10  application for a temporary restraining order, plaintiff argued that under *White v.*

11  *Samsung Electronics America, Inc*., 971 F.2d 1395 (9th Cir. 1992), defendants'

12  parody defense was ineffective because it was a "commercial" parody. However, the

13  White decision did not "directly discuss the Supreme Court's holding that for-profit,

14  noncommercial speech is protected under the First Amendment." *Mattel, Inc. v. MCA*

15  *Records, Inc*., 28 F.SUpp.2d 1120, 1155 fn. 54. Also in *White*, the danger of viewers

16  viewing the robot ad as a celebrity endorsement was compounded by the fact that the

17  ad was one in a series of advertisements using actual paid celebrity endorsers. *Id*.

18  Finally, in *White*, unlike in the *Mattel* case, the parody did not directly poke fun at the

19  celebrity (as Plaintiff's parody pokes fun directly at Mr. Diller) and was therefore

20  "subservient and only tangentially related to the ad's primary message." *Id*.

21       Under Supreme Court precedent, the fact that a parody makes a profit does not

22  strip it of protection under the First Amendment: "[speech] is protected [by the First

23  Amendment] even though it is carried in a form that is 'sold' for profit, and even

24  though it may involve a solicitation to purchase or otherwise pay or contribute

25  money." *Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council*, 425

26  U.S. 748, 761 (1976). Further, for-profit parody does not have to identify itself

27  clearly as a parody, and the fact that the criticism is light hearted as opposed to heavy

28

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

1   handed is irrelevant. *Mattel*, 28 F.Supp. 2d 1137-38 (finding defendant's use of

2   Mattel Barbie doll in song was a parody entitled to First Amendment protection). A

3   Ninth Circuit case decided after *White* declined to apply *White's* seemingly hard-

4   lined "for profit" dicta in a situation where the parody does not use the celebrity's

5   identity "entirely and directly" to sell a product. *Hoffman v. Capital Cities/ABC Inc.*,

6   225 F.3d 1180, 1185 (9th Cir. 2001) (photographs of Dustin Hoffman in iconic

7   *Tootsie* role digitally altered for publication in for-profit magazine wearing 1997

8   fashions).

9        Here, defendants' corporate name and fanciful Driller mascot are not pure

10  commercial speech because it does more than simply propose a commercial

11  transaction (*i.e.*, buying defendants' services), but also parodies Mr. Diller and makes

12  some irreverent jokes about business competition. *See, e.g., Hilton v. Hallmark*

13  *Cards*, 599 F.3d 894, 905 (2010) (finding that birthday card depicting likeness of

14  Paris Hilton not commercial speech). Here, defendant's corporate names, logo and

15  mascot are used in connection with promoting defendants' services, but also

16  broadcast an expressive statement about defendants' corporate identity and

17  nontraditional philosophy.

18

19                                  **CONCLUSION**

20        Based on the foregoing, defendants FilmOn.com, Inc. and Aereokiller, LLC

21  respectfully request that the Court deny plaintiff's application for a preliminary

22  injunction.

23

24  Dated:  September 7, 2012              BAKER MARQUART LLP

25

26                                  By: _/s/ Ryan G. Baker_____

27                                      Ryan G. Baker

28

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys for defendants Alkivaides
David, FilmOn.com, Inc. and
Aereokiller, LLC

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FILMON AND AEROKILLER'S RESPONSE TO OSC RE
PRELIMINARY INJUNCTION